[No. 15.   First Appellate District.—August 17, 1905.]

## CLARA BAUM, Administratrix of the Estate of Julius Baum, Deceased, Respondent, v. EDWARD ROPER et al., Defendants; J. W. REAY, JR., Appellant.

JUDGMENT—RENDITION—FINDINGS.—The making and filing of findings of fact and conclusions of law constitute the rendition of judgment.

ID.—EJECTMENT—WRIT OF POSSESSION.—In an action of ejectment a writ of possession may be executed against a defendant against whom judgment has been rendered or his grantee *pendente lite,* although the judgment had not been entered against him prior to the issuance of the writ.

ID.—ENTRY PENDENTE LITE.—A person not a party to an action of ejectment who enters into possession of the demanded premises pending the action may be dispossessed under a writ issued on a judgment against the defendants unless he clearly and satisfactorily shows that he did not enter under or in collusion with either of them.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to stay the execution of a writ of possession.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

T. M. Osmont, for Appellant.

W. B. Kollmyer, and Naphtaly, Freidenrich & Ackerman, for Respondents.

HALL, J.—This is an appeal by J. W. Reay, Jr., from an order refusing to stay the execution of a writ of possession issued under a judgment in ejectment in favor of plaintiff and against defendants.   Julius Baum brought an ejectment suit on the fourteenth day of April, 1892, against Edward Roper and wife, Kate Roper, and David J. Spence, to recover possession of a parcel of land situate at the southeast corner of Turk Street and Van Ness Avenue in the city and county of San Francisco, fronting fifty feet on Van Ness Avenue and one hundred and nine feet on Turk Street.   Pending suit Julius Baum died, and Clara Baum, as administratrix of his estate, was substituted as plaintiff.   Kate Roper also died, and her administrator was substituted.

Findings of fact and conclusions of law were signed February 5, 1897, and filed the next day, in favor of plaintiff and against all the defendants. Judgment was entered and recorded in accordance therewith February 10, 1897, but, as is afterwards found by the court, the clerk, in entering said judgment, through misprision and inadvertence, omitted the name of the defendant Spence therefrom. On the fourth day of April, 1901, a writ of possession was issued out of the court, and the sheriff was proceeding to execute the same when J. W. Reay, Jr., on the ninth day of April, 1901, obtained an order on affidavits to show cause why the execution of said writ should not be stayed. The order to show cause was discharged, and the sheriff directed to execute the writ forthwith May 28, 1901.

On May 29, 1901, the judgment was, by order of the court, amended *nunc pro tunc* as of the tenth day of February, 1897, so as in terms to run against David J. Spence.

Appellant, J. W. Reay, Jr., was not a party to the suit, but pending the same succeeded by mesne conveyances to the interest of Spence in the premises; and among other things now insists that he cannot be evicted as grantee of Spence for the reason that when the writ was issued, and when the order to show cause was heard and determined, no judgment had been entered against Spence. Before considering the main contention of appellant it is convenient to dispose of the contention just mentioned.

While it is true that an appeal will not lie from a judgment until it has been entered (*Spence* v. *Troutt,* 133 Cal. 605, [65 Pac. 1083]), the judgment in other respects gets its force and vitality from its *rendition* and not from its *entry.* The *rendition* of the judgment is the judicial act of the court; its *entry* is the ministerial act of the clerk. In *Los Angeles County Bank* v. *Raynor,* 61 Cal. 145, the court said: "But it is urged that the record shows that the judgment was not entered when the execution was issued. Nor was it necessary that it should have been. The enforcement of a judgment does not depend upon its entry or docketing. These are merely ministerial acts, the first of which is required to be done for putting in motion the right of appeal from the judgment itself, and of limiting the time within which the right may be exercised (Code Civ. Proc., sec. 681), or in which the

judgment may be enforced (Code Civ. Proc., sec. 685) ; and
the other for the purpose of creating a lien by the judgment
upon the real property of the debtor (Code Civ. Proc., sec.
671). But neither is necessary for the issuance of an execu-
tion upon a judgment which had been duly rendered. With-
out docketing or entry, execution may be issued on the judg-
ment and land levied upon and sold (*Hastings* v. *Cunning-
ham,* 39 Cal. 144) ; and the deed executed by the sheriff, in
fulfillment of the sale, not only proves the sale, but also
estops the defendant from controverting the title acquired by
it.''

To the same effect are *James* v. *Ballard,* 107 Cal. 132, [40
Pac. 108] ; 1 Freeman on Judgments, sec. 38; *Estate of Wood,*
137 Cal. 128, [60 Pac. 900] ; and *In re Cook,* 77 Cal. 232, [11
Am. St. Rep. 276, 17 Pac. 923, 19 Pac. 431].

In *Crim* v. *Kessing,* 79 Cal. 478, [23 Am. St. Rep. 491, 26
Pac. 1074], it was held that the making and filing of findings
of fact and conclusions of law constitute the rendition of
judgment. In this case findings of fact and conclusions of
law were filed February 6, 1897, long before the issuance of
the writ of possession.

On the second appeal of this case, taken shortly after the
actual entry of judgment as to Spence, the court held that
it could not consider the objection that the evidence did not
support the decision of the trial court, inasmuch as the appeal
had been taken more than four years after the *rendition* of
the judgment.

The judgment having been *rendered* although not *entered*
as against Spence before the issuance of the writ of posses-
sion, the writ could be executed either against Spence or his
grantee.

The main contention of appellant, however, is that he can-
not be dispossessed under the writ, for, although he entered
into possession of the premises after suit brought, he entered
as grantee of one A. W. Reay, who was not a party to the
suit, and was in possession when the suit was brought, and
so remained until his death in 1899. The discussion of this
contention requires a somewhat fuller statement of the facts
disclosed by the record before us.

In 1877 Julius Baum (the original plaintiff in this action)
brought a suit in ejectment for the premises in controversy

here against J. W. Reay (father of appellant), and in November, 1887, recovered judgment against J. W. Reay for the same, which judgment was on appeal affirmed prior to the beginning of the present suit. April 8, 1885, J. W. Reay conveyed to A. W. Reay a portion of the premises, having a frontage of six feet on Van Ness Avenue by one hundred and nine feet on Turk Street, with a width in the rear of forty-eight feet. Deed was recorded July 18, 1887. May 6, 1891, Edward Roper (one of the defendants in the present action) conveyed a one-half interest in the premises in question to A. W. Reay. This deed was not recorded. March 2, 1892, Edward Roper conveyed to David J. Spence the premises in question; deed recorded the next day. (The claim of title by Roper was from a different source from that of J. W. Reay.) April 4, 1892, Baum commenced this action against Roper, his wife, and Spence.

March 6, 1893, Spence deeded the premises to A. W. Reay; deed not recorded.

February 10, 1897, judgment was rendered for plaintiff against defendants in this suit, and subsequently,—to wit, June 24, 1899,—A. W. Reay deeded premises to J. W. Reay, Jr., (appellant).

April 4, 1901, after affirmance of judgment on first appeal by defendants in *Baum* v. *Roper,* 132 Cal. 42, [64 Pac. 128], the writ of execution was issued.

It will thus be seen that appellant, subsequent to the rendition of judgment in this suit, and pending an appeal therefrom, obtained through his deed from A. W. Reay the J. W. Reay title (which had long before been finally determined to be invalid as against Baum) to about one half the premises, the Roper title to an undivided one half, and the Roper-Spence title to the entire premises.

Under what circumstances a person not a party to a suit in ejectment, who entered pending the suit, may be dispossessed under a writ issued on a judgment against the defendants has been considered by the supreme court of this state in numerous cases.

In *Scheerer* v. *Goodwin,* 125 Cal. 154, [57 Pac. 789], which was an action brought by the plaintiff to restrain the sheriff from dispossessing him under a writ on a judgment in a suit in ejectment to which he was not a party, the court said:

"Under the judgment in the action of *Goodwin* v. *Scheerer, supra*, the sheriff was authorized to remove from the land the defendants in that action, and all persons found thereon whose possession was derived under the defendants, or either of them; and, in the absence of any showing to the contrary, it will be presumed that all persons coming into possession of the premises subsequent to the commencement of that action came in under the defendants therein. . . . Upon the issue of their right to remain in possession the burden is upon them to show affirmatively that their possession is rightful and under a title that has not been determined in the action, and that such possession was not taken by collusion with the defendants in the judgment." (Citing *Long* v. *Neville*, 29 Cal. 131; *Leese* v. *Clark*, 29 Cal. 664; *Wetherbee* v. *Dunn*, 36 Cal. 147, [95 Am. Dec. 166].)

In *Leese* v. *Clark*, 29 Cal. 664, the court, repeating language used in *Long* v. *Neville*, 29 Cal. 131, said "*Prima facie*, all who come into possession after action brought must go out, for the presumption is, nothing to the contrary appearing, that they came in under the defendant." In the same case the court also said: "The fruits of a successful litigation cannot be wrested from the prevailing party, and the process of the courts evaded, upon a mere claim set up under suspicious circumstances, resting upon affidavits alone, unless the case made by that kind of proof is reasonably satisfactory."

To the same effect is *California Q. M. Co.* v. *Redington*, 50 Cal. 160, where the court said: "It is incumbent upon a party seeking relief in a summary proceeding of this character to make out a clear case, free from ambiguity. A plaintiff in ejectment who recovers a judgment, perhaps after a protracted and expensive litigation, ought not to be deprived of the fruits of it, except in a case free from all reasonable doubt. The opportunity for collusion is so great, and the fraud is often so difficult of detection, that courts are reluctant to grant such relief on *ex parte* affidavits, except in cases clearly made out, and free from any reasonable suspicion of fraud or collusion." (See, also, *Sampson* v. *Ohleyer*, 22 Cal. 201.)

So in this case, as appellant confessedly entered after suit brought, if it can be fairly deduced from the evidence in the

record that he entered under or in collusion with either Spence or Roper, or, indeed, if he has not clearly and satisfactorily shown that he did not enter under or in collusion with either of them, the order of the trial court was right, and he must go out.

There is much evidence in the record that seems incompetent and immaterial, but certain salient points are quite clear. J. W. Reay, A. W. Reay, and Mrs. Kate Roper were brothers and sister, and J. W. Reay, Jr., is the son of J. W. Reay. It may be conceded that at the time of the bringing of this action A. W. Reay actually resided on and was in possession of the premises, and so continued till his death in 1899. It is equally certain that Edward Roper and wife also resided on the premises, and were in possession thereof at the beginning of the suit, and Roper so continued until after the death of A. W. Reay. The evidence also shows that the Ropers at the commencement of the suit were in possession as tenants of Spence, who at that time had a claim of title to the entire premises previously derived from Roper, which on its face was a better record title than the one-half interest then held by A. W. Reay (also derived from Roper), for the reason that the Spence title was under a recorded deed, while the other was under an unrecorded deed. After the bringing of this suit both these titles, as well as the J. W. Reay title to a portion of the premises (which by final judgment had been determined to be worthless as against Baum) passed to appellant by deed from A. W. Reay.

Appellant in his affidavit states: "That shortly after the death of the said Alfred W. Reay this deponent repaired said premises, papered the rooms and made other repairs thereto, and thereupon rented both of said houses to tenants, who immediately entered thereon, and they and their successors have ever since occupied and held said premises under this deponent and as tenants of his, and are now in the occupation thereof as such tenants." J. W. Reay, in his affidavit, states that "Edward Roper removed from said premises and from said city and county of San Francisco very shortly after the death of said Alfred W. Reay, and has not resided on said property or in said city and county since said date." From the foregoing two statements it is a very fair inference that the last person in the actual occupation of the premises before

the entry of appellant was Edward Roper, defendant in this action and tenant of Spence, also defendant in this action. It is significant that appellant, in his affidavit, makes no mention of the vacating of the premises by Roper. From the foregoing circumstances it is a very fair deduction that appellant received the actual possession of said premises from defendant Roper (the then only actual occupant thereof), the tenant of defendant Spence, and that he entered under the title derived from Spence. At any rate, he has not clearly shown that he did not obtain possession from Roper or enter under the Spence title. Such being the case, under the authorities above quoted and the well-established law, he ought to go out under the writ.

The order appealed from is affirmed.

Harrison, P. J., and Cooper, J., concurred.