[Civ. No. 6393. First Appellate District, Division One.—December 29, 1928.]

MARY KEENAN DORRIAN, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Respondent.

Bordwell, Mathews & Wadsworth and O. S. McConnell for Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Respondent.

SPENCE, J., *pro tem.*—This is an appeal from a judgment in favor of defendant and respondent, the City and County of San Francisco, in an action brought by plaintiff and appellant Mary Keenan Dorrian to quiet title to and recover damages for withholding possession of certain lands in San Francisco, which land was formerly a public street known as Ash Street.

Ash Street was near the center of the block of land in San Francisco now occupied by the city hall, having run parallel to McAllister and Fulton Streets between Polk Street and Van Ness Avenue. The street was 35 feet wide and 384 feet in length. The record does not disclose when this property was first used as a public street. It was conceded that Ash Street came into existence as a public street

by use and not by dedication or action on the part of municipal authorities. It was recognized as a public street at least as early as 1858 in conveyances covering property adjacent thereto and was apparently used and recognized as a public street until 1913.

Although the action was not brought to trial until 1924, the complaint was filed in 1918. The statute of limitations was not pleaded, as the action was commenced within five years after the formal abandonment of Ash Street as a public street in 1913.

Appellant is the sole surviving heir of her father, John Keenan, who died in 1858, and appellant's claim is based upon her contention that said John Keenan was the owner of the property described in the complaint at the time of his death. Appellant's case was apparently tried on the theory that John Keenan obtained title through the so-called ''Van Ness Ordinance'' hereinafter referred to. On this appeal it is contended that testimony shows without contradiction that appellant is the owner of the property and that the adverse findings on the issue of ownership are not supported by the evidence.

The issue of ownership was tried solely upon various stipulations of counsel and the testimony of Henry E. Monroe. In view of these stipulations it will be unnecessary to go exhaustively into the interesting history of the source of title.

It was stipulated that in 1853 the city was the owner in fee of this property and the lands adjacent thereto. In that year one Francis Quail executed a deed purporting to convey to John Keenan a large tract of land including the land in question. It was not contended that this deed vested in Keenan anything more than such squatter's rights, if any, as Quail may have had. No conveyance of any of this land was ever made by the city to either Quail or Keenan. For convenience, we will hereafter refer to the large tract of land covered by the Quail deed to Keenan as the ''Keenan Tract.''

In 1855, the so-called ''Van Ness Ordinance'' was passed in San Francisco. There were in fact two ordinances, which were subsequently ratified by the legislature on March 11, 1858. (Stats. 1858, p. 52.) The first of these ordinances, known as Ordinance No. 822, provided for the relinquishment of certain lands within the City of San Francisco which

come to the United States through the Mexican conquest, to persons in actual possession, with certain exceptions and reservations including streets and other public places. The actual possession referred to was "actual possession thereof by themselves or tenants on or before the first day of January," 1855; "provided such possession has been continued up to the time of the introduction of this ordinance in the common council, or if interrupted by an intruder, or trespasser, has been, or may be, recovered by legal process." The second of these ordinances, known as Ordinance No. 845, provided for the furnishing, through a commission, of a recommendation for a plan of streets. This map was subsequently prepared and became known as the Van Ness map. Ash Street was not delineated upon the Van Ness map.

Shortly after Keenan's death in 1858 his heirs conveyed to others certain property adjacent to Ash Street. In each instance the property conveyed was described as running to and along the line of Ash Street, but did not include any part of Ash Street, nor was any part of Ash Street ever conveyed by the Keenans. Ash Street was used as a public street until the formal abandonment shortly before the erection of the new city hall.

Mr. Monroe, the vice-president and chief counsel of the California Pacific Title Insurance Company, was called as a witness by appellant for the purpose of establishing ownership by common reputation. After considerable discussion between court and counsel, the testimony of Mr. Monroe was admitted over the objection of counsel for respondent, who subsequently made a motion to strike all of this testimony. This motion was not ruled upon, the court no doubt deeming a ruling immaterial in view of the decision in favor of respondent. As appellant's position on this appeal is based mainly on this evidence, we will briefly set forth the substance of Mr. Monroe's testimony.

Mr. Monroe testified that the abstract of title showed that the successors of John Keenan had conveyed the property on either side of Ash Street and that there was nothing of record to show that anyone else has deeded this property That the Keenan title had always been recognized as a good source of title to all of the Keenan tract, and that the records did not disclose any controversy. That title men, searchers of records, and abstract men as far as his knowledge of any titles in San Francisco went back to 1890, recog-

nized the Keenan tract as a valid source of title. That the Keenans never received any deed from the city. That, of course, his knowledge came from an examination of records in the last twenty-five or thirty years and from information he got from older title men, since deceased. That he remembered going over the origin of different claims with these men, but would not specifically say the Keenan tract. That he could not say in his conferences with these title men, the question of the validity of the title of the Keenan tract was ever brought up or doubted. All the old searchers and attorneys recognized and laid down a principle that these old claims, where there was no dispute at all, were to be accepted as a source of title. That as far as the record went there was no dispute over the Keenan tract. These old possessory claims were accepted by the abstract companies and searchers and were passed along without any question. That city deeds were required by them after the supreme court decided that it was necessary in order to establish title of record. These were obtained up to the time of the fire and since then the board of supervisors refused to grant any more city deeds. That searchers had recognized the title to the Keenan tract without any city deed. That there are no suits of record involving the possession of the Keenan tract and nothing in his records to show any possession or confirmation of possession in Keenan. That the only evidence recognizing possession officially would be a city deed and there was no city deed.

There is some difficulty in determining from the transcript and the appellant's briefs whether appellant claims title under the provisions of the Van Ness Ordinance or whether appellant claims title without relying upon that ordinance. On this appeal counsel lays stress upon the presumptions set forth in subdivisions 11 and 12 of section 1963 of the Code of Civil Procedure. Subdivision 11 provides a presumption ''That things which a person possesses are owned by him.'' Subdivision 12 provides a presumption ''That a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership. Counsel's opening brief is largely devoted to setting forth the evidence on which counsel claims to have proved possession, exercise of acts of ownership and common reputation of ownership. Assuming that there was competent evidence proving or tending to prove these facts, the result

would be that the proof of these facts would give rise to a disputable presumption of ownership. Ordinarily such proof and the resultant presumption would not compel the conclusion of ownership in the party making such proof as against the admitted ownership of the other party prior thereto. Here the parties stipulated that the city was the owner in 1853 and that no conveyance of the property was made by the city at any time and we are satisfied that in this case appellant's claim, if any, is dependent upon the Van Ness Ordinance.

In order to divest the city of title and prove title in John Keenan under the provisions of the Van Ness Ordinance, the burden was upon the plaintiff to show that John Keenan was in actual possession of the property herein referred to on or before January 1, 1855, and continued in possession until the introduction of the ordinance. "There is no presumption that any portion of the land covered by the ordinance was or was not in the actual possession of any one during this period; but, in any legal proceeding in which the fact whether a particular parcel of land was or was not then held in actual possession becomes material, it must be established by that party who relies upon the fact as an affirmative issue in support of his claim or defense. (Code Civ. Proc., sec. 1981.)" (*Goodwin* v. *Scheerer*, 106 Cal. 690, 696 [40 Pac. 18].)

Appellant concedes that there was no direct evidence of actual possession by Keenan of the property involved in this action and referred to as Ash Street. In fact there was no direct evidence to show that Quail or Keenan was ever in actual possession of any portion of the so-called Keenan tract. But it is contended that the property described in Quail's deed was always known as the Keenan tract and that "the historical fact that the property embracing Ash Street was publicly and notoriously known as Keenan Tract is 'justly entitled to the highest consideration' and furnished 'a just inference' that John Keenan was in possession of the land covered in the Quail deed and was owner thereof." Assuming, but not deciding, that a just inference would be furnished by such testimony, there is no evidence showing that any property was publicly or notoriously known as the Keenan tract in 1855 or at any other time. All that is shown is that Mr. Monroe and counsel on the trial referred to the property described in the Quail deed as the Keenan tract.

Mr. Monroe did not testify that this tract was known, publicly or otherwise, as the Keenan tract in 1855 or at any other time or that he ever discussed this particular tract with anyone. Furthermore, we are here concerned with the property formerly embraced in Ash Street, which property, so far as is affirmatively shown by the record, was at least as early as 1858 publicly and notoriously known as Ash Street and was used as a public street until 1913. Stress is laid upon the fact that Ash Street was not delineated on the Van Ness map. At most, this could only tend to show that Ash Street was not a street at the time the map was made, but would not relieve appellant from affirmatively proving that Keenan was in actual possession of the land at the time referred to in the Van Ness Ordinance. Proof of possession by Keenan in 1855 of the property described in the complaint and known as Ash Street was essential to plaintiff's claim of ownership by virtue of the Van Ness Ordinance and the evidence is insufficient to prove such possession and leaves this question of possession to conjecture and speculation. We conclude that the appellant failed to sustain the burden of proving her ownership of the property, and that the evidence was sufficient to sustain the findings adverse to appellant on this issue.

We do not wish to be understood as deciding that possession or ownership may be proved by common reputation of ownership in a case of this kind or that the evidence offered was competent evidence to prove common reputation. The authorities are not entirely in accord. For the reasons above set forth, we do not deem it necessary to discuss the authorities cited by counsel dealing with these questions.

It should be further noted that any common reputation of ownership or exercise of acts of ownership which it may be claimed that the testimony tended to show related to adjacent land in the so-called Keenan tract and not to Ash Street, the property here involved. Such testimony cannot be relied upon to prove possession in 1855 of the property herein involved and referred to as Ash Street, nor to establish the title thereto.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 28, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1929.

All the Justices present concurred.